IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUAN SERNA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-2559 |
| | § | |
| U.S. BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM & ORDER

Pending is Defendant U.S. Bank, N.A.'s Motion to Dismiss (Document No. 4). After carefully considering the motion, response, reply, and applicable law, the Court concludes as follows.

I. Background

Plaintiff Juan Serna ("Plaintiff") and his ex-wife Maria purchased a home at 21934 East Hammond Drive, Porter, Texas 77365 (the "Property") on or about October 14, 2004.[1] Plaintiff executed an Adjustable Rate Note (the "Note") to MILA, Inc. d/b/a Mortgage Investment Lending Associates, Inc. ("MILA") in the amount of $73,600.[2] To secure repayment of the loan, Plaintiff also executed a Deed of Trust on the Property (the "Deed of Trust") in which MILA

---

[1] Document No. 1-3 at 10 of 43 (Orig. Pet.).

[2] Id. Plaintiff's Original Petition attached and incorporated the Note, found at Document No. 1-3 at 19 of 43 to 23 of 43, as well as the Substitute Trustee's Deed, found at Document 1-3 at 24 of 43.

is named as the lender.³ The Note and Deed of Trust were subsequently transferred to Defendant U.S. Bank, N.A. ("Defendant"), with America's Servicing Company ("ASC") acting as the loan servicer.⁴

Plaintiff alleges that he began to experience financial difficulties and, in an effort to remedy the situation, entered into debt restructuring negotiations with Defendant to modify the terms and conditions of the Note.⁵ Plaintiff alleges that he was offered a loan modification by ASC and that during the next several months he obtained and submitted financial documents in response to ASC's requests.⁶ Plaintiff further alleges that ASC's representatives informed him "that he was not allowed to make any mortgage payments while in loan modification status," that "he was to ignore any foreclosure notices that he received while in loan modification status," and "that they would not take any action to foreclose on

---

³ Document No. 1-3 at 10 of 43. Plaintiff did not attach the Deed of Trust to his Original Petition, but Defendant has provided a copy, which the Court may consider. Document No. 4, ex. B. *See* Scanlan v. Texas A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003) (In ruling on a motion to dismiss, the court may consider "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim.").

⁴ Document No. 1-3 at 10 of 43.

⁵ Id. at 10 of 43 to 11 of 43.

⁶ Document No. 1-3 at 11 of 43.

2

the Property while in loan modification status."[7] Plaintiff alleges that while he was waiting for confirmation of the loan modification, believing that the discrepancy had been resolved, he was served with a Suit to Evict filed by Defendant.[8]

Plaintiff filed suit against Defendant, alleging that Defendant wrongly conducted a foreclosure sale of the Property on March 5, 2013, in which Defendant sold the Property to itself, and that Defendant "wrongfully attempted to enter upon and dispossess [the Plaintiff] of his Property."[9] Plaintiff alleges causes of action for trespass to try title, breach of contract, and common

---

[7] Id. Although his Original Petition is ambiguous on the point, Plaintiff does not dispute that he ultimately defaulted after Defendant allegedly told him to stop making payments. See Document No. 6 at 1-2 (Plaintiff's Response) ("Plaintiff asserts . . . that the Defendant made representations to him that induced him not to make his monthly payments which, due to his reliance thereon, placed him in default"; "Plaintiff claims that [Defendant], while not in writing, induced him to default on his mortgage.").

[8] Document No. 1-3 at 11 of 43.

[9] Id. Although the foreclosure sale took place on March 5, 2013, Plaintiff evidently continues to occupy the Property. See id. at 12 of 43 ("[Plaintiff] has physical possession of the Property"). Defendant particularizes Plaintiff's admission that he holds possession of the Property by stating, without contradiction, that "Plaintiff has lived [in the property] rent free, mortgage free, tax free, and insurance free for over four (4) years." Document No. 7 at 7 (emphasis in original).

3

law fraud.[10] Defendant moves to dismiss Plaintiff's Original Petition and to recover attorney's fees and costs.[11]

## II. Motion to Dismiss

### A. Legal Standard

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint. *See* Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the

---

[10] Document No. 1-3 at 12 of 43 to 13 of 43.

[11] Document No. 4.

4

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65. "[A] formulaic recitation of a cause of action's elements will not do." Id. at 1965.

B. Analysis

1. Trespass to Try Title

Plaintiff's putative trespass to try title action is premised upon allegations that: "A. [Plaintiff] has physical control of the Property; B. [Plaintiff] owned or possessed the Property at the time of the injury; C. [Defendant] physically, intentionally, and voluntarily entered [Plaintiff's] Property; and D. [Defendant's] trespass caused an injury to [Plaintiff's] right of possession."[12]

---

[12] Document No. 1-3 at 12 of 43. Although Plaintiff titles his cause of action "Trespass to Try Title," he recites the elements of common law trespass. Document No. 1-3 at 12 of 43. See Stukes v. Bachmeyer, 249 S.W.3d 461, 465 (Tex. App.-Eastland 2007) ("To recover trespass damages, a plaintiff must prove that (1) it owns or has a lawful right to possess real property, (2) the defendant physically, intentionally and voluntarily entered the land, and (3) the defendant's trespass caused damage."). Plaintiff alleges no specific facts as to Defendant's alleged entry, but merely provides "a formulaic recitation" of the elements of common law

"A trespass to try title action is the method of determining title to lands, tenements, or other real property." TEX. PROP. CODE § 22.001(a). "To state a claim for trespass to try title, the plaintiff must allege, *inter alia*, that the defendant 'unlawfully entered upon and dispossessed him of such premises, stating the date, and withholds from him the possession thereof.'" Martinez v. CitiMortgage, Inc., CIV.A. H-13-0727, 2013 WL 2322999, at *2 (S.D. Tex. May 28, 2013) (Atlas, J.) (citing TEX. R. CIV. P. 783(e)) (granting motion to dismiss claim for trespass to try title where plaintiff maintained possession the property). Plaintiff has not alleged that Defendant dispossessed him of the Property--indeed, Plaintiff alleges that despite the foreclosure sale, he "has physical possession of the Property."[13] Therefore, Plaintiff's claim for trespass to try title is dismissed.

2. <u>Breach of Contract</u>

Plaintiff alleges that Defendant's actions constitute a breach of contract because: "A. There exists a valid, enforceable contract between [Plaintiff] and [Defendant]; B. [Plaintiff] has standing to sue for breach of contract; C. [Plaintiff] performed, tendered

---

trespass, which is insufficient to survive a motion to dismiss under Rule 12(b)(6). See Twombly, 127 S. Ct. at 1965. To the extent that Plaintiff asserts a common law trespass claim against Defendant, such claim is dismissed.

[13] Document No. 1-3 at 12 of 43.

performance, or was excused from performing their contractual obligations; D. [Defendant] breached the contract; and E. The breach of contract by [Defendant] caused [Plaintiff's] injury."[14] This is merely "a formulaic recitation" of elements of a breach of contract claim.[15] See Twombly, 127 S. Ct. at 1965. Plaintiff additionally alleges, however, that Defendant's foreclosure sale of the Property was "in violation of the agreement between the parties and without proper and timely notice to the Plaintiff as required by the Note and Deed of Trust as well as the Texas Property Code."[16] The Deed of Trust provides that "[i]f Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to the sale as provided by Applicable Law."[17] Plaintiff's allegation is sufficiently specific to identify this provision as the one that Defendant allegedly violated.

---

[14] Id.

[15] Under Texas law, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." Smith Int'l, Inc. v. Egle Grp., LLC, 490 F.3d 380, 387 (5th Cir. 2007) (quoting Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C., 51 S.W.3d 345, 351 (Tex. App.-Houston [1st Dist.] 2001)).

[16] Document No. 1-3 at 11 of 43.

[17] Document No. 4, ex. B at 14.

Defendant argues, however, that Plaintiff cannot establish the necessary element of performance because Plaintiff breached his contractual obligations by defaulting on his payments.[18] Plaintiff contends that "[Defendant] cannot assert that [Plaintiff] is in default under the original loan because it was [Defendant's] representations that induced the default."[19] Plaintiff acknowledges that the Statute of Frauds precludes enforcement of the oral representations on which he allegedly relies, but argues that his performance may still be excused based on those representations.[20] This precise argument has been rejected by this Court in a motion to dismiss based on similar allegations. *See* Martinez, 2013 WL 2322999, at *2 (Atlas, J.) (dismissing breach of contract claim because "allowing a borrower to avoid foreclosure by arguing that he was induced to default based on an oral promise not to foreclose during loan modification negotiations 'would allow Plaintiff to circumvent the statute of frauds by essentially enforcing an unenforceable modification agreement.'") (citing Montalvo v. Bank of Am. Corp., SA-10-CV-360-XR, 2013 WL 870088, at *8 (W.D. Tex.

---

[18] Document No. 4 at 8-9.

[19] Document No. 6 at 2. Plaintiff's Original Petition actually alleges that it was representatives of ASC, not Defendant, whose communications induced his default, but it is reasonable to infer that ASC, as the mortgage servicer, was acting as Defendant's agent, so the distinction is immaterial. See Document No. 1-3 at 11 of 43.

[20] Document No. 6 at 2.

8

Mar. 7, 2013). Plaintiff's breach of contract claim is therefore dismissed.

3. <u>Common Law Fraud</u>

Plaintiff alleges that:

The actions committed by [Defendant] constitute common law fraud because [Defendant's] representatives ('ASC') made false and material misrepresentations to [Plaintiff] when informing [Plaintiff] that he was not allowed to make any mortgage payments while in loan modification status. Further, [Defendant's] representatives informed [Plaintiff] that he was to ignore any foreclosure notices that he received while in loan modification status. Moreover, [Defendant's] representatives informed [Plaintiff] that they would not take any action to foreclose on hi[s] Property while in loan modification status. [Defendant] knew that the representations were false or made these representations recklessly, as a positive assertion, and without knowledge of the truth. In addition, [Defendant] made these representations with the intent that [Plaintiff] act on them and [Plaintiff] relied on these representations which caused [Plaintiff's] injury.[21]

"To state a claim of fraud by misrepresentation under Texas law, a plaintiff must sufficiently allege (1) a misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." <u>Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.</u>, 620 F.3d 465, 468 (5th Cir. 2010) (citing <u>Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.</u>, 51 S.W.3d 573, 577 (Tex. 2001)).

---

[21] Document No. 1-3 at 13 of 43.

9

Fraud claims are subject to the heightened pleading requirements of Rule 9(b), which requires that "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. Put simply, Rule 9(b) requires the complaint to set forth the who, what, when, where, and how of the events at issue." Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008) (internal quotations omitted).

Here, Plaintiff has identified the allegedly fraudulent statements, but has not sufficiently alleged the time when the statements were made so as to satisfy the requirements of Rule 9(b). Plaintiff's Original Petition alleges only that Plaintiff purchased the Property on October 14, 2004, and the foreclosure sale took place on March 5, 2013, and no date(s) is ever pled as to when the alleged misrepresentation was made. In his opposition response Plaintiff asserts that the alleged misrepresentation "occurred after October 14, 2004 and most likely transpired within the one year period prior to the date [March 5, 2013] on which the foreclosure sale occurred." Guesswork like this--narrowing to a

period of a year within a range of eight and a half years--is wholly inadequate to meet Rule 9(b)'s requirement of pleading specifically <u>when</u> some alleged fraud was perpetrated. *See* <u>Ausmus v. HSBC Bank USA, N.A.</u>, CIV.A. G-13-288, 2013 WL 6195482, at *5 (S.D. Tex. Nov. 27, 2013) (Froeschner, M.J.) (dismissing fraud claim where "Ausmus merely alleges that she purchased the Property on July 25, 2006, the foreclosure sale occurred on December 4, 2012, and that the misrepresentations occurred after their 2006 purchase, but 'most likely . . . transpired within the one year period prior to the 2012 foreclosure sale.'").

Furthermore, '[a]lthough Rule 9(b) expressly allows scienter to be 'averred generally,' simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b). The plaintiffs must set forth *specific facts* supporting an inference of fraud." <u>Dorsey</u>, 540 F.3d at 339 (citations omitted) (emphasis in original). Plaintiff alleges no specific facts supporting an inference of fraudulent intent, but instead merely alleges that Defendant knowingly or recklessly made alleged false statements. Plaintiff's fraud claim is therefore dismissed.

III. <u>Attorney's Fees and Costs</u>

Defendant seeks to recover its attorneys' fees and costs incurred in defending this lawsuit. In a diversity case based on state law claims, state law controls both the award of fees and the

11

reasonableness of fees awarded. <u>Mathis v. Exxon Corp.</u>, 302 F.3d 448, 461 (5th Cir. 2002). Under Texas law, attorneys' fees may not be recovered unless provided for by statute or contract. <u>Dallas Cent. Appraisal Dist. v. Seven Inv. Co.</u>, 835 S.W.2d 75, 77 (Tex. 1992). Defendant argues that it is entitled to reimbursement under Section 9 of the Deed of Trust, which provides:

> If (a) Borrower fails to perform the covenants and agreements contained in this Security Agreement, [or] (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations) . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument . . . . Lender's actions can include, but are not limited to: . . . (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument . . . .[22]

This Court has awarded attorney's fees based on identical Deed of Trust provisions after plaintiffs brought suit following foreclosure on their homes. *E.g.*, <u>May v. Wells Fargo Bank, N.A.</u>, CIV. 4:11-3516, 2013 WL 4647673 at *5 (S.D. Tex. Aug. 29, 2013) (Atlas, J.) (citing <u>In re Velazquez</u>, 660 F.3d 893, 899-900 (5th

---

[22] Document No. 4, ex. B at 8.

Cir. 2011) (reversing district court decision denying fees based on identical provision)).[23]

The Fifth Circuit calculates the amount of reasonable attorney's fees using the "lodestar method," in which the district court multiplies the reasonable number of hours expended on the litigation by the reasonable hourly rate for the participating lawyer. Forbush v. J.C. Penney Co., 98 F.3d 817, 821 (5th Cir. 1996). The movant bears the burden of documenting the appropriate hours expended and hourly rates. Hensley v. Eckerhart, 103 S. Ct. 1933, 1941 (1983).

Defendant has submitted the affidavit of George A. Kurisky, Jr., its attorney of record, in support of its request for attorneys' fees and costs.[24] Kurisky lists a total of 28.3 hours of legal work performed in this case by Johnson DeLuca Kurisky & Gould, P.C., and asserts that this work was both reasonable and necessary, and that a reasonable attorney's fee and expenses would total $6,750.00.[25] The Court finds that 28.3 hours of legal work

---

[23] Plaintiff does not dispute that Defendant is entitled to attorney's fees, nor does he address the issue of attorney's fees at all in his Response. See Document No. 6.

[24] Document No. 4, ex. D.

[25] Id. at 1-2. The affidavit breaks down the time expended as follows:
   (a) Review pleadings filed by Plaintiff; conference with client regarding case; review documents provided by client. (4.2)
   (b) Draft and file Answer, Affirmative Defenses, and Counterclaim; draft and file removal documents. (3.8)

13

is commensurate with what would be reasonably necessary on this case, and the total fee claimed in the amount of $6,750 indicates hourly rates averaging less than $239 per hour, which is entirely reasonable. The hourly rate claimed is substantially less than lead counsel's claimed customary hourly rate of $400. Defendant's fee request is well within the bounds of what the Court finds is reasonable and necessary, and is granted.

IV.  Order

For the foregoing reasons, it is

ORDERED that Defendant U.S. Bank N.A.'s Motion to Dismiss (Document No. 4) is GRANTED and Plaintiff's claims are DISMISSED with prejudice, and Defendant U.S. Bank shall have and recover from Plaintiff Juan Serna reasonable and necessary attorneys' fees in the amount of $6,750.00.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this 9TH day of January, 2014.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

(c) Draft and serve interrogatories, request for production, and request for admission to Plaintiff (6.3)
(d) Research law and draft Motion to Dismiss; Draft affidavit for attorneys' fees and costs (14.0)

Id. at 1.

14